Mr. Aki is bringing a Sixth Amendment right of ineffective assistance of counsel. This is unusual because normally this particular issue is not brought on a direct appeal. However, this case warrants it being brought on a direct appeal, and I feel there is sufficient evidence in the record for you to be able to rule on this issue. If not, then it's evident that the legal representation was so inadequate that his Sixth Amendment rights were violated. And the reason being is that there was an illegal search and seizure in the very beginning of this case, and none of his attorneys brought this issue and brought a motion of suppression to the court. And that's why Mr. Aki feels that there was ineffective assistance of counsel, that this motion should have been brought because the search of the automobile was a violation of his Fourth Amendment rights. In order to prove ineffective assistance of counsel under Strickland, we have to show that the counsel's actions were outside the You know, looking at the evidence, it's evident, at least when I read the evidence, that there was a violation of the Fourth Amendment rights, that this was an illegal search and illegal seizure. This should have alerted counsel at least to have brought a motion for suppression. If it had been denied, that's one thing. It still would have been preserved for an appeal, but it should have been brought in the first place. The second prong of Strickland is that prejudice by the counsel's actions. There was a reasonable probability, had this motion been brought, that he would have had success. And I believe, looking at the facts and the law, that there was a reasonable probability that the evidence should have been suppressed. And if that was the case, then Mr. Aki wouldn't be spending 11 years in federal prison. There would not even be a case to argue. So we need to look at this violation of the Fourth Amendment in order to show that there was ineffective assistance of counsel. The government argues that the evidence was seen in plain view and seized. However, for the plain view argument to take place, you have to have several factors first. The police officer has to be lawfully located in the place where they are able to see in plain view the object that they seized. Well, am I correct that this car was, when he split out of the car, that he left the car running, door open, on a freeway, shoulder? That's correct. However, why would it be untoward for an officer showing up at the scene to look in and see what's going on? I mean, somebody could still be in the car. He may want to turn the engine off. I mean, the car could take off. Lots of things could be going on in the car. What's wrong with the officers looking into the car at that point, and then he sees what he sees? Well, a couple of reasons, Your Honor. First of all, he was the third officer on the scene. The first officer came up and... Well, there's a fight going on, so the first officer goes to take care of the fight. Right. Well, the second officer comes up, and then the parties are split. Each officer has them. When the third officer comes up, Officer O'Neill, yes, is everything okay? And they say, yes, everything is under control. We're handling it. It's okay. And then he proceeds to walk up to the car. Now, if his argument, like the government portrayed, if his argument was, well, the car is running, okay. But it was off to the shoulder. The lights were on. It was, you know, perfectly okay where it was. What if there was... What if a kid had been in the car? Well, I believe, Your Honor, that if somebody else had been in the car, that the two... one of the two officers would have been alerted to that fact, because someone would have said, particularly the girl that was hysterical, could have said, look, let me go, or I have a child in the car, or something of that nature, to alert them to the fact that they needed to look into the car. But there wasn't any such scenario. If he went up to turn the car off because the engine was running, then you would have logically gone on to the side of the driver's side to be able to turn the car off. However, he went around to the passenger side. That was the door that was open. And he did not try to turn the car off. In fact, when he left, the car was still running. So he never did turn off the engine. So it was left in that same situation. However, he took his flashlight and proceeded, and this is where it's a search, because he did not have a lawful right to be in that position, to be searching for anything at that point. If he had walked up to the car, looked in to see, are there any other occupants in the car, that would have been fine, and that would have been justified. However, to take out a flashlight and start searching around, and then look over on the driver's side, on the seat, to see this little baggie that contained, looked like brown sugar, actually, and we use brown sugar in Hawaii. It could have been brown sugar. One of the plain view arguments is you have to have a reasonable suspicion that you know exactly what this is, that you're seeing in plain view. He didn't. Then he proceeded to continue to search and find a glass pipe that was stuck behind, or beside the bottom of the passenger side door, seat and the door. Now, that's not in plain view. He was looking. He was searching. So, in my viewpoint, in looking at the evidence, this was a search, and he did not have a lawful right to be there in the first place. He didn't have any reasonable suspicion that there was anything illegal going on, other than this domestic dispute that was happening. He didn't have a reason to go in and try and see, was there any drugs or contraband? There was no such reason. So he was outside the limits of the parameters of finding evidence in plain view. And so that's the reason why, Your Honor, I feel that this search violated his Fourth Amendment rights, and the motion for suppression should have been brought. And it wasn't brought, and that was ineffective assistance of counsel. It should have been brought. Well, before you run out of time, I want to ask, how would he have, how was he prejudiced by the little flashlight, the first look that the officer made? The car was towed away and searched with a warrant later, and a lot of other evidence was found. How, what, what is the prejudice to him in this peek-a-boo search that the officer made with the flashlight? Well, the prejudice to the Honor is, first of all, a motion wasn't brought for suppression, but the prejudice is, he did not have a right to go in and start searching his automobile. There was no traffic stop. In order to search without a warrant, there are certain requirements that you need to fulfill for a warrantless search. There was no traffic stop. That's one of them. It wasn't in hot pursuit. The car was stopped. Well, under this Strickland test of inadequate representation, we look at whether there was a, whether the lawyer overlooked, failed to do something that a smarter lawyer might have done. Well, I think that But then you also have to find prejudice. Well, he was prejudiced because he's spending 11 years in prison, Your Honor, and he was convicted on Well, how do we know he wouldn't be spending even more time if For what? There was no charge. He was not arrested. So if he was not arrested for anything, and if you find something illegally and they didn't have a right, then you've taken away that, that person's rights. He, there was no reason for him to be arrested. He wasn't under arrest at the time that they did the search. So there was no reason, and if they hadn't have searched and found anything, he wouldn't have been up on drug charges. So that was a prejudice to him, that there would have been no case at all if there was no search, if nothing had been found, because the domestic dispute did not create a reason to go in and search the automobile. It didn't, you know, have a reason to tow the car away and get a warrant to search the automobile. So there was prejudice to him. There would not have been a case. His rights were violated, and that's prejudicial. I'd like to reserve the remaining time. Thank you, Erin. May it please the Court, staff, counsel. Good morning. I'm Constance Hassell, representing the United States of America. I'd like to discuss the one issue that was preserved on appeal in this case, and that was the district court's denial of the defendant's motion to dismiss. That was an issue that was preserved and was properly before this Court. It was unaddressed before during appellant's argument, so I will jump in here. The defendant does not challenge that the evidence discovered was his. He admits they were his in the plea colloquy and other areas. And the government is not relying on tainted evidence to get a conviction. Any of the allegations that the defendant made are unrelated to the reliability of the underlying prosecution's case. And the allegations the defendant is making of police misconduct having to do with theft of property would only further incriminate him. It's additional evidence that he's saying existed. I think in reviewing the record, Your Honor, that one thing that went on with everybody below was that there was a lot of confusion about the term inventory. What is inventory? And I think that the Court was able to parse through the various definitions. There are at least three definitions or understandings of inventory in the record below. And in addition, there's the layman's term. I'll start with the layman's definition of inventory, which I think people will agree is when you go, say, in a store, take inventory. How many items you have and how many of each item you have. What do you have totally is what most people think of as an inventory. Officer O'Neill prepared an inventory for forfeiture, but the title of the document was a notice of seizure for forfeiture. The purpose of that document was to give Mr. Achillean or Ms. Santiago notice of what was being seized or held pursuant to the statute. While it was seized or held, it wasn't necessarily taken, although later, Officer O'Neill testifies that the drugs that were in the car were in fact later seized, taken, and submitted into evidence. So that was the purpose of his inventory, which the term inventory was being bandied about left and right. And so his was actually a notice of what we're seizing, which was basically the car and what's in it, but not necessarily what we're going to keep. Now, when Detective Strass did an inventory pursuant to the search warrant, his inventory is everything they kept for evidence, excluding the evidence that was in the car. The evidence that had already been submitted, which was the drug evidence. The third definition, or third area in which the term inventory was used, was when the car was returned to Ms. Santiago, and the term inventory was used for the document that actually returned the car to her. It was actually Narcotics Vice Division Property Indemnity Agreement. There was no indication that anyone did an inventory in the way that a layman understands inventory. So it is with this background of the confusion of the term inventory that the court was presented with a testimony in trying to weave through that. The court, in weaving through that, found that there was no detail to show that this was not the case, nor is there to now survive. And there was no due process violation, which would take care of any constitutional violation. And there was no, because there was no fabrication, the defendant is not claiming that the police planted the evidence. He is also not claiming entrapment. They made me do it. So the due process grounds fall. Under other circumstances, it just did not fit. There was no constitutional statutory violation. There was no illegal conduct to deter. And there was nothing that was related to protecting judicial integrity. Could I, could you help me on the procedure now? There was about two years between his two guilty pleas. He pled guilty in November of 99, and then he pled guilty again. And was there a negotiated plea bargain on that? On the second plea in October of 2001? Yes, there was, Your Honor. Now, was the sentence that he received consistent with the plea bargain? Oh, yes, it was. So the only issue, he did reserve the issue of whether the case should have been dismissed for lack of evidence, if the evidence had been properly, had been excluded. So that issue was preserved in some form. And then the other issue was adequate representation. Well, during the two years that this thing was going on, before he was sentenced, did he have the same lawyer all the time? No, Your Honor. In this case, there were four before Ms. Dotson, four different lawyers, none of whom raised the issue for a motion to suppress. So that was not... Yes, that was, it's unclear when Ineffective Assistance of Counsel charges leveled, where it's been aimed, because there were four previous counsel. So not one of them chose to make a motion to suppress. And although the questions on a motion to suppress might be different from the questions that were asked in a motion to dismiss, it appears that there's two areas where the assistance would be leveled. It appears that there was no reason to make a motion to suppress. And so that was most likely why none of the four previous counsel made it. Could he have been sentenced consecutively on the gun charge as well as the drugs charge? Oh, yes, he could have been. So he got some benefit. Oh, he got a definite benefit. He got a benefit in the first place of not having been in the first plea agreement, or the first charge. He didn't get charged with what would have been a mandatory ten years. And in the final plea agreement, his drug charge was lessened, and he did not have to serve an additional consecutive five-year term for the drug charge. So he got a lower level on the drug charge and didn't have to do consecutive on the gun charge on top of that. So he received considerable benefit. So the fact that he may be serving a sentence to serve 121 and 120 months to this run concurrently is actually quite a bargain for him because he faced quite a bit more. Can I just clarify something? If I understand it correctly, we have a conditional guilty plea. Correct. And the conditional guilty plea reserved only the issue of the motion to dismiss for outrageous government conduct. That's correct. That does not preserve the motion to suppress issue. Yes, right. That issue is not brought up. It's sort of being brought in the back door, and now it's on center stage because it's coming in on an ineffective assistance, which was not preserved. Well, that's usually 2255. Well, yeah, that isn't preserved either. Right. I mean, it wasn't in the guilty plea. Absolutely not. It was one issue preserved on appeal. Okay. As to the motion to dismiss for outrageous government conduct, that has to do with whether items were stolen or not properly taken into inventory after the arrest. That's the gist of it, yes, Your Honor. Okay. And does that have anything to do with the arrest or the conviction? No, it does not, Your Honor, because the defendant did not challenge that they were his. The reliability of the prosecution's case is the same. If there had been any sloppiness or something where the evidence disappeared, I think the term inventories accounts for a lot of the confusion. Well, there was nothing, just to put it more directly, there's nothing in the missing, among the missing, that would have favorably affected the trial in any way. And to further that, Your Honor, it would have only have made the drug amount more, and another gun would have made another gun charge. So, yes, it was only incriminating evidence that was being alleged to have disappeared. Okay. And we argue, Your Honor, that the record does not support that as anything other than a diversion. Okay. Before I get to any other questions, I'll hear remarks from Stotson. Thank you. Thank you, Your Honor. First of all, just because the inventories were different doesn't mean that there was misconduct or something that was definitely illegal taking place here. Mr. Akini voluntarily asked, where's my $15,000 and where's my gun? And there's no reason for him to bring up something to incriminate himself unless it was true. Excuse me, Erin. Looking at the inventory list, they aren't the same. They're different. I just had trouble seeing what that has to do with. With the case? Yeah. Well, I think, Your Honor, I think you have to look at, the reason the motion was brought was for outrageous conduct. And if you're going to condone this kind of conduct to continue, I think it's one of the reasons that you have supervisory powers to dismiss a case is because of the conduct. And it sends a message that we will not condone this kind of corruption in our criminal justice system. And that's exactly what is going on. They're overlooking. The investigation did nothing. They didn't talk to O'Neill, who had the keys. The door was unlocked. A significant amount of money was missing. And who cares? They don't care. Let's just send up the defendant because he pleads guilty. He says he did it. But that's not correct. That's not why our justice system is here. We need to stop things like that from occurring. Otherwise, it's going to continue if they don't get the message that you can't do this. And that's why the motion to dismiss was brought forward. On the issue of ineffective assistance of counsel, that was not waived. That was permitted to be brought forth, either as a direct or as a 2255. So I still submit, Your Honor, that the very first part of this case, his rights were violated, and there should never have been a case in the first place. Thank you, Your Honor. Thank you, counsel, for the argument. And the matter just argued will be submitted. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. We'll come back to our questions in just moment. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Goodwin, Rymer, Tg Nelson